# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, )<br>)<br>Plaintiff, )<br>) **CIVIL ACTION NO. 19-566**<br>vs. )<br>)<br>M. LIPSITZ & CO. HOLDINGS, INC. and )<br>M. LIPSITZ & CO., LTD. d/b/a RECYCLE )<br>MIDLAND and MONAHANS IRON & )<br>METAL, )<br>)<br>Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Union Pacific Railroad Company ("Union Pacific"), by and through its attorneys, and files this Complaint against the Defendants M. Lipsitz & Co. Holdings, Inc. and M. Lipsitz & Co., LTD. d/b/a Recycle Midland and Monahans Iron & Metal (collectively, "Defendants").

## PARTIES

1. Plaintiff Union Pacific is a Delaware corporation with its principal office located at 1400 Douglas Street, Omaha, Nebraska 68179.

2. Defendant M. Lipsitz & Co. Holdings, Inc. is a Texas corporation with its principal office located at 100 Elm Street, Waco, Texas 76704.

3. Defendant M. Lipsitz & Co., Ltd. is a Texas corporation with its principal office located at 100 Elm Street, Waco, Texas 76704. Defendant M. Lipsitz & Co., Ltd. operates several facilities under different names including Recycle Midland and Monahans Iron & Metal. Recycle Midland is located at 3601 W. Industrial Avenue, Midland, Texas 79703. Monahans Iron & Metal is located at 1044 W. A Street, Monahans, Texas 79756.

## JURISDICTION

4. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1336 & 1337(a) in this matter because the matter is brought by Union Pacific, an interstate railway carrier subject to the jurisdiction of the Surface Transportation Board ("STB"), to recover from Defendants demurrage charges arising under (1) the Interstate Commerce Commission Termination Act ("ICCTA") 49 U.S.C. § 10702 and 49 U.S.C. § 10746, and (2) freight and other accessorial charges under 49 U.S.C. § 11101 and 49 U.S.C. §10702.

5. The Court also has jurisdiction pursuant to 28 U.S.C. §§ 1332 in this matter because the parties are diverse and the amount in controversy is greater than $75,000.

6. This Court has personal jurisdiction over each Defendant in this matter because the Defendants have sufficient contacts with and maintain their principal offices within the State of Texas.

## VENUE

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). The Defendants maintain their principal offices in this District. Likewise, a substantial amount of the charges, which are owed by Defendants to Union Pacific and serve as the basis of this dispute, were accrued at Defendants' facilities in this District.

## FACTS

8. Union Pacific at all times material this action was a common carrier by railroad engaged in interstate commerce and doing business in the United States.

9. The subject matter of this action stems from charges assessed by Union Pacific under a tariff and public price document published by Union Pacific for demurrage, freight and other accessorial services performed by Union Pacific.

10. The public price document that applies to the freight charge at issue in this action is Exempt Circular UPRR 4021 (the "Circular") applying on Public Scrap Steel. The version of the document applicable at the time of the shipment could be found online in Union Pacific's Price & Document Inquiry System.

11. Defendants received the subject railcars for loading and unloading at the Recycle Midland location operated by Defendants, individually or collectively, in Texas.

12. The tariff that applies to the demurrage and other accessorial charges at issue in this action is Tariff UP 6004-C (the "Tariff") applying on Accessorial Services – Rules and Charges. At all times material to this action, the version of the Tariff applicable at the time the charges accrued was available on Union Pacific's website at https://www.up.com/customers/all/terms/index.htm.

13. The demurrage claims asserted by Union Pacific in this Complaint are made pursuant to the decision in STB Docket EP 707, served April 11, 2014 and effective July 15, 2014 (the "Order"), and promulgated under the regulations found at 49 C.F.R. § 1333.3. A copy of the Order is attached as **Exhibit A**.

14. Prior to the accrual of any of the demurrage charges at issue in this action, Union Pacific served Defendants with proper notice of the applicable Tariff in compliance with 49 C.F.R. § 1333.3. A copy of the notice to Union Pacific customers, including Defendants, is attached as **Exhibit B**.

## FIRST COUNT – DEMURRAGE CHARGES

15. Union Pacific re-alleges Paragraphs 1 through 14 of this Complaint as if repeated here.

16. At all times material to this action, Union Pacific transported railcars to the Recycle Midland location.

17. All of the railcars transported to the Recycle Midland location were placed for loading or unloading by Defendants pursuant to 49 C.F.R. § 1333.3.

18. Defendants designated the Recycle Midland location as "Order In."

19. An "Order In" location is one at which Union Pacific does not place railcars until the receiver has made an order for placement of specific railcars (commonly referred to as "Placement Instructions").

20. Defendants receive notice from Union Pacific when railcars arrive at Union Pacific's nearby yard (commonly referred to as "Serving Area"), and the timeline for assessing demurrage charges on those railcars begins upon said arrival and notice.

21. Demurrage will continue to accrue until the Defendants provide Placement Instructions to Union Pacific.

22. At all times material to this action, the railcars that are the subject of the demurrage charges in this lawsuit were under the control of Defendants because Defendants exclusively gave Union Pacific Placement Instructions as an "Order In" location, directing Union Pacific as to when and where the railcars were to be placed and subsequently removed.

23. Pursuant to 49 U.S.C. § 10746, Union Pacific computes demurrage charges, establishes rules related to those charges, and enforces those rules in accordance with the Order (**Exhibit A**) and Demurrage Liability, 49 C.F.R. § 1333.

24. Under the guidelines promulgated by the STB, demurrage is defined as "a charge that both compensates rail carriers for the expenses incurred when rail cars are detained beyond a specified period of time (*i.e.*, free time) for loading or unloading, and serves as a penalty for

undue car detention to encourage the efficient use of rail cars in the rail network." 49 C.F.R. § 1333.1.  *See also* Order (**Exhibit A**).

25. The STB's guidelines further provide and 49 C.F.R. § 1333.2 states:

> Demurrage shall be assessed by the serving rail carrier, *i.e.* the rail carrier providing rail cars to a shipper at an origin point or **delivering them to a receiver at an end-point or intermediate destination**.  A serving carrier and its customers (including those to which it delivers rail cars at origin or destination) may enter into contracts pertaining to demurrage, but in the absence of such contracts, demurrage will be governed by the demurrage tariff of the serving carrier. [emphasis added]

26. Union Pacific has not entered into any private contracts with Defendants related to the payment of the demurrage charges at issue in this action.

27. "A plain reading of the demurrage regulations clearly provides in the absence of a private contract between a *common carrier and its customers* that the demurrage regulations will apply."  *Illinois Cent. R.R. Co. v. Kinder Morgan Liquids Terminals,* No. 16 C 8044, 2017 U.S. Dist. LEXIS 70391, at *5 (N.D. Ill. May 9, 2017) (emphasis in original).

28. Defendants caused the railcar delays that resulted in the demurrage charges at issue in this action.  Defendants received the railcars for loading or unloading and detained the cars beyond the period of free time as set forth in Union Pacific's Tariff, and as such, shall be held liable for the demurrage charges since Union Pacific delivered actual notice to Defendants of the Tariff.

29. Union Pacific is entitled to recover the cost of demurrage charges from Defendants pursuant to the Interstate Commerce Commission Termination Act ("ICCTA") 49 U.S.C. § 10702 and 49 U.S.C. § 10746 and regulations under 49 C.F.R. § 1333.

30. The demurrage invoices identified in **Exhibit C** were delivered by Union Pacific to Defendants to the location where the invoices have routinely been delivered, disputed, and/or paid; however, Defendants have failed or refused to pay Union Pacific's demurrage invoices.

31. The outstanding invoices related to demurrage charges, after the application of all credits and adjustments, total **$163,160.00**, which is currently due and owing.

32. As a result of the failure or refusal by Defendants to make payment of the demurrage invoices, Union Pacific has suffered damages in an amount of **$163,160.00**.

## SECOND COUNT – FREIGHT AND ACCESSORIAL CHARGES

33. Union Pacific re-alleges Paragraphs 1 through 32 of this Complaint as if repeated here.

34. Under the ICCTA, a rail carrier is authorized to provide transportation or service on reasonable request, 49 U.S.C. § 11101, and a rail carrier providing transportation or service subject to the jurisdiction of the STB shall establish reasonable rates, rules and practices related to such transportation and service, 49 U.S.C. § 10702.

35. The Circular and the Tariff comply with Union Pacific's requirement to establish rates, rules and practices for the transportation and service provided to Defendants at issue in this action.

36. Union Pacific's Circular and Tariff applicable to the transportation and service at issue were publicly available at all times material to this action.

37. Union Pacific provided transportation and service to the Defendants and invoiced Defendants at the rates set forth in the Circular and Tariff.

38. The freight and other accessorial invoices identified in **Exhibit C** were delivered by Union Pacific to Defendants to the location(s) where the invoices have routinely been

delivered, disputed, and/or paid; however, Defendants have failed or refused to pay these invoices.

39. The outstanding invoices related to freight and other accessorial charges total **$5,543.00**, which is currently due and owing.

40. As a result of the failure or refusal by Defendants to make payment of these invoices, Union Pacific has suffered damages in an amount of **$5,543.00**.

**WHEREFORE**, Union Pacific demands that a judgment be entered in favor of Union Pacific and against Defendants for the demurrage, freight and other accessorial charges in the amount of **$168,703.00**, plus interest and costs of suit and any additional charges that subsequently accrue on Defendants' account.

Dated: October 3, 2019

Respectfully submitted,

UNION PACIFIC RAILROAD COMPANY

Fred S. Wilson
TBN: 00788687
Union Pacific Railroad Company
24125 Old Aldine Westfield Road
Spring, TX 77373
(281) 350-7249
fredwilson@up.com

**ATTORNEY FOR PLAINTIFF**